# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**THERESA SCHROEDER,**

    **Plaintiff,**

**-vs-**             Case No. 6:04-cv-1411-Orl-31DAB

**COMMISSIONER OF SOCIAL SECURITY,**

    **Defendant.**

_____

# ORDER

The Plaintiff brings this action pursuant to the Social Security Act (the Act), as amended, Title 42 United States Code Section 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration (the Commissioner) denying her claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits under the Act.

The record has been reviewed, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the exhibits filed and the administrative record, and the pleadings and memoranda submitted by the parties in this case. Oral argument has not been requested.

For the reasons that follow, the decision of the Commissioner is **affirmed.**

## *I. BACKGROUND*

### A. Procedural History

Plaintiff filed for a period of disability, DIB and SSI benefits on November 8, 2001. R. 21-55, 286-89. She alleged an onset of disability on November 26, 2000, due to alcohol abuse, depression, and knee pain. R. 51-55, 286-89. Her application was denied initially and upon reconsideration. R.

32-47. Plaintiff requested a hearing, which was held on December 22, 2003, before Administrative Law Judge Albert D. Tutera (hereinafter referred to as "ALJ"). R. 300-10. In a decision dated February 25, 2004, the ALJ found Plaintiff not disabled as defined under the Act through the date of his decision. R. 11-26. Plaintiff timely filed a Request for Review of the ALJ's decision. R. 10. The Appeals Council denied Plaintiff's request on July 28, 2004. R. 5-7. Plaintiff filed this action for judicial review on September 23, 2004. Doc. No. 1.

### B.    Medical History and Findings Summary

Plaintiff's medical history is set forth in detail in the ALJ's decision. By way of summary, Plaintiff complained of depression, alcoholism, and knee problems. R. 286. After reviewing Plaintiff's medical records and Plaintiff's testimony, the ALJ found that Plaintiff suffered from a chronic left knee sprain, which was a "severe" medically determinable impairment, but not an impairment severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. R. 25, Finding 3. Plaintiff was found unable to return to her past relevant work (R. 25, Finding 7) but the ALJ determined that she had the residual functional capacity to perform substantially a full range of sedentary work, as she could lift ten pounds and stand and/or walk for two hours and sit for six hours in an eight-hour workday. R. 23; 25, Findings 12-13. The ALJ found that Plaintiff had nonexertional limitations in that she could occasionally perform postural activities but not on a persistent or prolonged basis. R. 23. In making these determinations, the ALJ found that Plaintiff's allegations of severe pain and limitations were not totally credible for the reasons set forth in the body of the decision.[1] R. 22. Considering Plaintiff's vocational profile and

---

[1] Within the body of the decision, the ALJ discredited Plaintiff's reported limitations based on inconsistencies between those limits, medical evidence, and Plaintiff's activities as reported to medical providers. R. 22.

RFC, the ALJ applied the Medical-Vocational Guidelines (the grids), 20 C.F.R. Pt. 404, Subpt. P, App. 2, and concluded that Plaintiff could perform work existing in significant numbers in the national economy. R. 24; 25, Finding 12. Accordingly, the ALJ determined that Plaintiff was not under a disability, as defined in the Act, at any time through the date of the decision. R. 24; 26, Finding 14.

Plaintiff now asserts four points of error. First, she argues that the ALJ erred by relying upon the grids, rather than obtaining vocational expert (VE) testimony, because Plaintiff suffered from non-exertional impairments, knee pain, and depression. Second, she claims the ALJ erred by finding that her depression was not severe. Third, she asserts that the ALJ erred by improperly applying the pain standard. Fourth, she argues that the ALJ erred in evaluating her credibility. All issues are addressed, although not in the order presented by Plaintiff. For the reasons that follow, the decision of the Commissioner is **AFFIRMED**.

## II.  STANDARD OF REVIEW

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – *i.e.,* the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson*, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

### *III. SEVERE MENTAL IMPAIRMENT*

Plaintiff argues that the medical evidence reflected depression, and the ALJ should have found it to be a "severe" impairment affecting her ability to perform basic work activities. The Commissioner argues that, although Plaintiff has been diagnosed with a mental condition, the mere diagnosis says nothing about its severity, and the overall evidence of record does not establish that Plaintiff had a severe or disabling mental impairment.

At Step 2 of the five-step evaluation process, the ALJ is called upon to determine whether a claimant's impairments are severe. By definition, this inquiry is a "threshold" inquiry. It allows only claims based on the most trivial impairments to be rejected. In this Circuit, an impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience. A claimant need show only that her impairment is not so slight and its effect not so minimal. *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986).

Plaintiff contends that the evidence supports her contention that she is disabled because the ALJ's findings are allegedly not consistent with the medical evidence, especially the reports of Dr. Mendelson and Dr. Steed.  R. 21.  The ALJ found that Plaintiff suffered from depression but that these impairments resulted in "only mild difficulties in maintaining social functioning and mild difficulties maintaining concentration, persistence and pace."  R. 21.  Dr. Mendelson's Psychiatric Review Technique Form and Mental Residual Capacity Assessment, dated January 27, 2002, opined that Plaintiff had moderate difficulties in maintaining concentration, persistence or pace and had experienced one or two episodes of decompensation of extended duration.  R. 237.  He also noted that Plaintiff was moderately limited in the ability to understand and remember detailed instructions, maintain attention and concentration for extended periods, carry out detailed instructions, and the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods. R. 241-42.

Dr. Steed's report (on reconsideration of her appeal) dated June 12, 2002 noted Plaintiff's report that her pain and confusion had worsened, she was unable to concentrate, and her sleep was disrupted by pain. R. 117.  As further evidence of her depression, Plaintiff cites her testimony that she gets depressed because "[I] can't do what I want to do." R. 305.

As the Commissioner points out, the Psychiatric Review Technique Form (PRTF), completed by Dr. Mendelson on January 27, 2002, was by a non-examining psychologist and even though it noted "moderate" difficulties with concentration and one or two episodes of decompensation (R. 227-44), the PRTF was internally inconsistent because it conflicts with the narrative at the end of the PRTF (R. 243) which said that Plaintiff was found to have the ability to perform most routine

household chores and most simple, unskilled, assignments with "at least adequate comprehension and memory, social functioning, adaptations, concentration and persistence." R. 243.

Dr. Mendelson's PRTF also was not consistent with the PRTF of the other non-examining psychologist, Dr. Steed, who completed it approximately six months later on June 12, 2002. R. 259-70. Dr. Steed found that Plaintiff had a medically determinable impairment that was "non-severe" and Plaintiff had only mild limitations in social functioning and mild difficulties in maintaining concentration, persistence, or pace R. 259-69. Dr. Steed's report (inexplicably separated from the PRTF) opined that Plaintiff would be able to perform simple, repetitive, routine tasks in a normal work setting and she did not appear to suffer from a psychological/psychiatric condition that was of disabling proportion. R. 117.

Although Plaintiff was admitted to Lifestream Behavioral Center on September 27, 2001 for problems with depression, she admitted it was because she was "drinking too much." R. 214. Plaintiff reported a long history of alcohol abuse and depression, however, she had never sought or received any past psychiatric treatments, and had never taken medication for any mental condition. R. 214. Even during this admission, the evidence shows that she was oriented to time, place and person, and able to maintain adequate eye contact; Plaintiff had fair attention and concentration during this time, her memory was intact, and her intelligence average. R. 214. Once she was treated with medication for alcohol abuse and depression, Plaintiff was released after two to three days with no work-related limitations. R. 212-13. At the time she was released, it was noted that Plaintiff's insight and judgment had improved and she was instructed to follow-up with individual therapy and was given a rating of 54 on the Global Assessment of Functioning (GAF) scale, which indicated moderate difficulties with social and occupational functioning. R. 212-13.

Plaintiff contends that the GAF of 54 represented a mental limitation that indicated that she had an ongoing severe mental impairment. The ALJ recognized that Plaintiff was given a GAF rating of 54, indicating moderate symptoms or difficulties with social or occupational functioning. R. 18. According to the American Psychiatric Association, ratings on the GAF scale should be for the current period, at the time of the evaluation, because ratings of current functioning will generally reflect the need for treatment or care. American Psychiatric Association, Diagnostic & Statistical Manual of Mental Disorders, 33 (4th ed. 1994) (DSMIV). Plaintiff's GAF on the date of her release from Lifestream Behavioral Center was a reflection of her functioning at that point in time, and not necessarily an indication that she was disabled for a lengthy period of time within the meaning of the Act, particularly since she received no other mental health treatment and no physician suggested that Plaintiff had limitations related to depression. However, Plaintiff reported in forms submitted to Social Security that she had no difficulties with her memory and concentration problems intermittently. R. 93.

During her follow-up appointment at Lifestream Behavioral Center, Plaintiff reported staying sober and attending Alcoholics Anonymous (AA) meetings multiple times a week. R. 208. Progress notes from February 2002 indicate that Plaintiff reported a mostly good mood, despite sleep problems due to the birth of her daughter's baby prematurely. R. 202. None of the Lifestream reports indicate that Plaintiff was in any way limited from work activity or that she was experiencing a severe mental impairment. Based upon this evidence, the ALJ concurred Dr. Steed's opinion that Plaintiff's mental impairments were not severe. R. 21. Thus, it is apparent that the ALJ carefully considered the evidence. The medical and other evidence support the ALJ's determination that Plaintiff did not suffer a severe mental impairment.

-7-

### *IV. PAIN AND CREDIBILITY*

Plaintiff asserts that the ALJ erred in evaluating her knee pain. She argues that the ALJ erred by finding her subjective complaints not fully credible. She contends that the ALJ failed to provide adequate and specific reasons for discrediting her complaints. The Commissioner contends that the ALJ's determination concerning Plaintiff's limitations from knee pain was supported by substantial evidence.

Pain is a non-exertional impairment. *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The ALJ must consider all of a claimant's statements about her symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528. In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the Eleventh Circuit's three-part "pain standard":

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Foote*, 67 F.3d at 1560 (quoting *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)). Pain alone can be disabling, even when its existence is unsupported by objective evidence, *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992), although an individual's statement as to pain is not, by itself, conclusive of disability. 42 U.S.C. § 423(d)(5)(A).

Although the ALJ did not refer to the Eleventh Circuit's pain standard as such, he clearly was aware of the governing standards for evaluating subjective complaints because he cited the applicable regulations and Social Security Ruling ("SSR") 96-7p. R. 21. *See Wilson v. Barnhart*, 284 F.3d

1219, 1225-26 (11th Cir. 2002) (per curiam) (ALJ properly applied the Eleventh Circuit pain standard even though he did not "cite or refer to the language of the three-part test" as "his findings and discussion indicate that the standard was applied").  Moreover, the ALJ complied with those standards.  He obviously determined that plaintiff had an objective medical condition that could give rise to the alleged symptoms, because otherwise the ALJ would not be required to assess the credibility of the alleged complaints.

Having concluded that he had to make a credibility determination of Plaintiff's subjective complaints, the ALJ plainly recognized that he had to articulate a reasonable basis for his determination.  In that respect, immediately after discussing the need to determine Plaintiff's RFC, the ALJ stated:

> The claimant has a knee disorder which could reasonably cause some pain and other symptomology.  However, the claimant's allegations of sever pain and limitations are not supported by the medical or other evidence.  The claimant alleges chronic severe knee pain but the evidence shows that her left knee discomfort is intermittent, vague and mild.  All diagnostic studies have been negative and multiple examinations have shown no neurologic deficits, some decreased range of motion in the left knee due to complaints of pain, no swelling or effusion, only mildly antalgic gait, and slightly decreased muscle development on the left.  Contrary to the claimant's testimony regarding severe sitting limitations, on March 15, 2001 she reported her symptoms were made better by sitting; she also reported that her only limitations were with prolonged standing, walking, kneeling, squatting, and ascending and descending stairs.  In addition by May 11, 2001 the claimant's only limitations were reported as descending stairs, mowing grass and running; it was noted that she could stand for 1 hour, walk for 3 hours, and had no problems with sitting, driving or transitions.  While the claimant alleges severe left knee pain, she has not been hospitalized for this condition and there is no evidence that she sought any emergency medical treatment for complaints of pain.  To the contrary, the evidence shows that the claimant went for prolonged periods (from November 2001 to July 2002 and from July 2002 to May 2003) without seeking any medical treatment for complaints of knee pain. . . . Regarding her left knee, the claimant's orthopedist has related that there is no evidence of a surgically correctable lesion.  The claimant testified to being hospitalized for seven days due to depression.  However, the evidence shows that the claimant voluntarily admitted herself on September 27, 2001 due to "drinking too much"

>alcohol; at that time the claimant reported that her drinking had worsened over the last two years and she was drinking about a fifth to a pint of whiskey with coke each day. The evidence shows that the claimant was placed on Serzone for alcohol abuse and depression and reported improvement with this medication; on November 20, 2001, she reported no adverse side effects with medication. On one occasion the claimant reported some difficulty with sleep but at that time she also related that her daughter just had a premature baby; the evidence shows that the claimant lived with her boyfriend and her youngest daughter and granddaughter. While the claimant testified that she spends her days on the couch, the evidence shows that she previously reported that she was able to accomplish activities of daily living, housecleaning, some shopping, cooking, small loads of laundry, yard work with breaks and driving. In addition, the claimant was able to attend AA meetings three to four times a week. Considering the foregoing, the claimant's allegations of severe pain and limitations are not entirely credible.

R. 22.

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Jones v. Dep't of Health and Human Servs.*, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. *Foote*, 67 F.3d at 1561-62; *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988).

Here, the ALJ – in a detailed and thorough analysis – offered specific reasons for discrediting Plaintiff's subjective complaints. The ALJ acknowledged that Plaintiff had a knee disorder which could reasonably cause some pain, however, the ALJ identified a number of reasons for discrediting Plaintiff's subjective complaints based on the medical or other evidence. The evidence showed that Plaintiff's left knee discomfort was intermittent, vague and mild, diagnostic studies were negative, and multiple examinations had shown no neurologic deficits. R. 108 (x-ray normal); R. 189 (functionally healed) ; R. 190 (vague discomfort and stiffness); R. 192 (vague discomfort, no obvious

effusion); R. 191 (improvement in the MCL sprain when compared to studies dating back to 1997); R. 198 (no evidence of a surgically correctable lesion); R. 194 (experienced some improvement with discomfort on the Vioxx; evidence of very mild medial collateral ligamentous laxity); R. 196 (ligaments stable or at least unchanged); R. 194 (vague discomfort; no obvious deformity or swelling); R. 198 ("It doesn't seem to have a pattern consistent with a reflex dystrophy).

Following two months of physical therapy, Plaintiff had gained significant increased knee bend, up to 90 degrees by March 19, 2001 and was walking with only a mild antalgic gait. R. 193. Dr. Huntt, Plaintiff's treating orthopedist, opined on June 19, 2001 that Plaintiff would be limited from squatting, deep knee bend, kneeling or any persistent or prolonged climbing or going up and down stairs. R. 195. As of July 16, 2001, "clinically she had essentially full extension." R. 190. Dr. Huntt stated on July 2, 2001 that he still could not come up "with any good reasons as to why she is not doing better" but felt that Plaintiff would have to be released to limited work activities at some point. R. 192. On July 16, 2001, Dr. Huntt released Plaintiff to "light work" with "no prolonged standing, walking, squatting or stooping," but no restrictions whatsoever on sitting. R. 190. He confirmed on August 16, 2001 that Plaintiff should remain on light work. R. 190. He noted on November 15, 2001 (approximately one year after the car accident which caused the injury) that Plaintiff had reached maximum medical improvement, having sustained a four to five percent whole body permanent partial impairment. R. 189. "She should probably refrain from prolonged standing, walking, kneeling or crawling. Otherwise, I have nothing else to offer her." R. 189.

The ALJ recognized that, contrary to Plaintiff's testimony regarding severe sitting limitations, on March 15, 2001 she reported her symptoms were made better by sitting; she also reported that her only limitations were with prolonged standing, walking, kneeling, squatting, and ascending and

descending stairs. R. 149; *See also* R. 118 (symptoms made better by pain medication, wrapping leg with warm towel); R. 133 (symptoms better with rest). As the ALJ noted, by May 11, 2001, Plaintiff's only limitations were descending stairs, mowing grass and running; she could stand for one hour, walk for three hours, and had no problems withسitting or driving. R. 118. The record bears out the ALJ's observation that the evidence shows prolonged gaps in the periods (from November 2001 to July 2002 and from July 2002 to May 2003) in which Plaintiff did not seek any medical treatment for knee pain. Even when Plaintiff was examined on March 11, 2002 by her family physician, Dr. Roque, there was no swelling or deformities and Mobic[2] "seemed to be holding out regarding joint pains." R. 249.

As to Plaintiff's other non-exertional limitation, her depression, the ALJ noted that Plaintiff had been hospitalized for seven days due to depression, but that she had voluntarily admitted herself due to "drinking too much" alcohol, after her drinking had worsened over the previous two years; she reported drinking about a fifth to a pint of whiskey each day. R. 208, 212, 214. Plaintiff was placed on Serzone for alcohol abuse and depression which improved her condition without side effects. R.212-13, 208 (does not seem overly depressed time of discharge). Plaintiff's problem was not related to the knee injury alone; she admitted to the psychiatrists at Lifestream that she had "a long history of alcohol abuse and depression." R. 214 R. 212 ("patient stated that she had been drinking a gallon of liquor daily").

The ALJ also properly considered Plaintiff's daily activities in assessing her credibility. He cited her testimony that she spends her days on the couch was discredited by evidence that showed

---

[2]MOBIC is a nonsteroidal anti-inflammatory drug (NSAID) indicated to help relieve the signs and symptoms of osteoarthritis and rheumatoid arthritis. *See* http://www.mobictablet.com/mobicWeb/jsp/osteo-help.jsp.

that she previously reported she was able to do (her own) housecleaning, some shopping, cooking, small loads of laundry, yard work with breaks, driving, and attending AA meetings three to four times a week. R. 82-83, 91-92.

The ALJ's reasons for partially discrediting Plaintiff's testimony included inconsistencies between her reports and the examination findings, as well as inconsistencies between her statements and her activities of daily living. These are factors the ALJ is directed to consider. 20 C.F.R. §§ 404.1529; 416.929. The ALJ's reasons are supported by substantial evidence.

### *V. APPLICATION OF THE GRIDS*

Plaintiff claims that because she suffered from depression and knee pain, she had nonexertional limitations, precluding the application of the grids and requiring VE testimony. Plaintiff also contends that limitations on her balance would significantly erode the unskilled sedentary occupational base, thus, requiring the testimony of a vocational expert. The Commissioner contends that the ALJ's RFC determination was clearly supported by substantial evidence and no vocational expert was necessary.

Once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant court perform other work that exists in the national economy. *Foote*, 67 F.3d at 1558. In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a claimant. *Allen v. Sullivan*, 880 F.2d 1200, 1201 (11th Cir. 1989). This burden may sometimes be met through exclusive reliance on the "grids." *Foote*, 67 F.3d at 1558. Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors. 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(e); *Foote*, 67 F.3d at

1559; *Heckler v. Campbell*, 461 U.S. 458 (1983) (exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements).

Exclusive reliance is not appropriate "either when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills." *Walter v. Bowen*, 826 F.2d 996, 1002-3 (11th Cir. 1987). In almost all of such cases, the Commissioner's burden can be met only through the use of a VE. *Foote*, 67 F.3d at 1559. It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a VE to establish whether the claimant can perform work which exists in the national economy. In any event, the ALJ must make a specific finding as to whether the non-exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations. *Foote*, 67 F.3d at 1559.

In this case, the ALJ properly determined that Plaintiff did not suffer from a severe mental impairment, her limitations from knee pain were not fully credible, and properly assigned an RFC for sedentary work. The only issue is whether a nonexertional postural limitation recognized by the ALJ (R. 24) – restrictions in balancing – would erode the occupational base for a full range of sedentary work and require the testimony of a vocational expert. Plaintiff contends the ALJ failed to consider SSR 96-9p, which specifically states that if an individual has difficulty balancing when standing or walking on level terrain, there may be significant erosion of the unskilled sedentary occupational base requiring the testimony of a vocational expert.

As the Commissioner points out, although a restriction on balancing when standing or walking on level terrain *may* result in erosion of the unskilled sedentary occupational base, Plaintiff has not pointed to any evidence to support such a problem.  The medical evidence of Plaintiff's impairments is to the contrary.  Dr. Huntt, Plaintiff's treating orthopedist, does not place any restrictions whatsoever on Plaintiff's ability to balance. R. 190.  The ALJ noted that Dr. Huntt found Plaintiff able to perform light work with no prolonged standing, walking, squatting or stooping. R. 190. These limitations have no effect on an individual's ability to perform a wide range of sedentary work activity, which requires only occasional walking and/or standing and "[p]ostural limitations or restrictions related to such activities as climbing ladders, ropes or scaffolds, *balancing*, kneeling, crouching, or crawling would not usually erode the occupational base for a full range of unskilled sedentary work significantly because those activities are not usually required in sedentary work." *See* Doc. No. 19-2, Social Security Ruling 96-9p at 7 (emphasis added).  The ALJ properly relied on Dr. Huntt's opinions as Plaintiff's treating orthopedist in apply the Social Security Regulations to Plaintiff's limitations.  R. 23.

The ALJ noted and properly discounted the opinion of Plaintiff's family physician, Dr. Roque, that Plaintiff would have a sitting limitation (Tr. 23).  The ALJ properly rejected Dr. Roque's questionable revision in his Medical Source Statement of [Plaintiff's] Ability to do Work-Related Activities (R. 104-06) in which he changed his opinion of Plaintiff's ability to sit without restriction to requiring periodically alternating with standing.  R. 105.  Besides the fact that Dr. Roque's speciality is family medicine, he provided no explanation whatsoever for the change in the form. Plaintiff's representative at the time (not current counsel for her appeal) explained that he was "furnishing a modified physical assessment form. . . This form was taken back to her physician when

I was checking it for her ability to sit.  The physician changed it from an ability to sit for 6 hours to must alternate between sitting and standing. . . . The 'assessment form' shows that she is unable to handle sedentary forms of employment." R. 102.  Dr. Roque's "modified" opinion is not consistent with Dr. Huntt, Plaintiff's orthopedist, or with the overall evidence of record.  Because Plaintiff could perform unlimited types of work at a sedentary level, it was unnecessary to call a VE to establish whether she could perform work existing in the national economy.  *See Foote*, 67 F.3d at 1559. Accordingly, the ALJ was justified in his reliance upon the grids.  *See id.*

## *CONCLUSION*

The record in this case shows that Plaintiff has a chronic knee injury which causes her a certain amount of pain and that she has had to deal with alcohol abuse.  The ALJ appropriately considered these circumstances and analyzed them in relation to the exacting disability standard under the Social Security Act.  For the reasons set forth above, the ALJ's decision is consistent with the requirements of law and is supported by substantial evidence.  Accordingly, the Court **AFFIRMS** the Commissioner's decision pursuant to sentence four of 42 U.S.C. § 405(g).  The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE** and **ORDERED** in Orlando, Florida on January 17, 2006.

*David A. Baker*
DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record